STATE BAR GRIEVANCE ADMINISTRATOR v BESSMAN. (Docket No. 57845.) On order of the Court, the additional statement of facts relative to pending motion for stay, filed by appellant, hereby is treated as a motion for immediate consideration, and the same hereby is granted. The motion by appellant for a stay of proceedings is considered, and the same hereby is denied. *Mitchell L. Bacow* for respondent-appellant.

LEVIN, J., dissents as follows:

I would grant the motion for a stay of proceedings thereby enabling Sheldon Bessman to continue to practice law until resolution of his appeal from a Grievance Board order of disbarment entered December 4, 1975.

Bessman resigned from the State Bar in 1963 after being charged with misappropriating funds of a probate estate. He was reinstated after a September 19, 1972 hearing.

In the summer of 1960 he began managing a hotel in El Dorado, Kansas for an aunt and a cousin, David Bessman. He sued for back wages and the trial court entered judgment in his favor after deducting credits due the defendants for monies retained while he was managing the property. The Supreme Court of Kansas reversed and disallowed compensation for the period during which he was a "faithless servant", the court having concluded, contrary to Sheldon's claim, that his retention of the money was not with a view to giving credit to his employer against the wages due him. Sheldon's aunt and cousin, David, sought to prevent his reinstatement in 1972 and after prevailing in the Supreme Court of Kansas appear to have been instrumental in reactivating the Grievance Administrator's file.

David appeared at the 1972 reinstatement hearing and sought to testify regarding his business transactions with Sheldon. The panel concluded that David's claim of embezzlement and claim that Sheldon owed him money were "immaterial" to the matter before it. Nevertheless, David related in a general way his claim that Sheldon had "embezzled monies from me"; that he had given his "destitute" cousin a job when "he had nothing. I sent him to my hotel in El Dorado,

Kansas with the understanding that he could work and pay off" certain indebtedness. "[I]t was improper for him to accept various kickbacks of my money. It was my own money. * * * If he needed money he only had to take an advance and draw. And he took thousands and thousands of dollars. I have no objection to that. I was glad to see him back on his feet." "It was a sacrifice to bring him from Las Vegas to El Dorado. My reward from him was to take money from my tenants and pocket it, and take money from—I bought an ice machine—and take $300 from his pocket. It was a terrible thing. I feel when he bought the air conditioners with my money to take $400 as a kickback and take one of them to the City Airport and pocket the money. This is wrong. I feel very strongly that he should straighten his own house before he is authorized to be allowed to handle client's money."

He was cross-examined regarding his complaints.

Sheldon made a statement regarding the nature of these complaints and he explained his version of the nature of the differences. At the conclusion of the proceedings, the following occurred:

*"Mr. Alspector:* Other than the other Mr. Bessman and the other personal dealings with the hotel, do you have any other financial actions that you and he have had?

"I take it from your prior testimony that you know of no *other* behavior on his part that would suggest unfitness to practice law?

*"Mr. D. Bessman:* Absolutely nothing.

*"Mr. Alspector:* Nothing." (Emphasis supplied.)

The instant formal complaint, filed Feb. 13, 1975, charges as misconduct Sheldon's statement in his petition for reinstatement that since the discipline was imposed his conduct had been "exemplary and above reproach", his affirmative response at the 1972 hearing to a similarly phrased inquiry and his failure to tell the 1972 hearing panel that he was a "faithless servant" as concluded by the Kansas Supreme Court.

The hearing panel dismissed the complaint, finding that the chairman of the reinstatement panel had ruled with reference to David's "attempt to testify regarding improper withholding by respondent of money of this witness" that "the Panel was not concerned with 'embezzlements' " and that no appeal was taken from that determination and its order of reinstatement. On those findings, the hearing panel stated as conclusions of law that "[t]he questions raised in the formal complaint * * * were matters of concern" in the 1972 hearing, "[n]o showing has been made in this proceeding that the testimony of the witness offered [in the 1972 hearing] and other evidence in connection therewith, was not available at the time of such hearing", the determination that " 'embezzlements' were not of concern in

connection with the reinstatement of respondent was a determination of the issue presented to this Panel", "[s]uch determination is res judicata of the issue", and the instant formal complaint herein "is not an appropriate method to attempt to re-try an issue" before the 1972 panel.

The Grievance Board, in reversing and disbarring Sheldon, concluded that Sheldon was duty bound to disclose the facts which he failed to do, that there was "dishonesty, fraud and deceit", and that res judicata did not apply because the subject matter was "never adjudicated on the merits in the 1972 proceedings, and the reason they were not rests with Respondent's concealment of those transactions. The doctrine of res judicata in any event is totally inapplicable to the charge of failure to disclose material facts."

Sheldon's position is of sufficient merit to justify a stay during the pendency of the appeal. No claim is made that his conduct during the 3-1/2 years since readmission has not been in keeping with the standards of the profession. The Administrator does not deny Sheldon's assertion that his conduct has been "exemplary and that no claim is made * * * that he has been guilty of any professional misconduct", etc., responding with "neither admits nor denies * * * for insufficient knowledge."

The Grievance Board's conclusion that Sheldon should have resolved matters against himself which were apparently in good faith dispute and told the reinstatement panel that he was a "faithless servant" who had embezzled money suggests that any reinstated lawyer might years later be disbarred if belated charges of misconduct are brought to light after reinstatement.

The rules provide for public notice of a petition for reinstatement. A hearing was held on this petition. The subject matter did come to light before reinstatement.

The witnesses at the 1975 hearing were Sheldon Bessman and David Bessman who were both also present at the 1972 reinstatement hearing. The subject matter was partially explored at the 1972 hearing and more fully explored at the 1975 hearing. Essentially what we have here is additional evidence and a different quasi-judicial judgment as to the materiality and relevancy of this evidence. This is not a case where the whole subject matter was concealed from the attention of the Grievance Administrator or the hearing panel.

If the Grievance Administrator was dissatisfied with the refusal of the reinstatement panel to consider the allegations of David Bessman, he could have appealed the order of reinstatement to the Grievance Board. The decisions of this Court make clear that the doctrine of res judicata applies to quasi-judicial proceedings. The situation here is not much different than any other case where additional evidence

comes to light after entry of a judgment which has become final because no longer appealable.

The reinstatement panel knew about the hotel controversy and nevertheless reinstated Sheldon. The subject matter was not further "adjudicated on the merits" because the Administrator did not appeal.

Before we require Sheldon Bessman to cease practicing law now that he has apparently reestablished himself, we should resolve the issues he raises on appeal.

I would grant a stay of proceedings.